Brian J. Schulman, SBN 015286
Nedda R. Gales, SBN 029670
Lauren Y. Shapiro, SBN 034040
WEISS BROWN
6263 North Scottsdale Road, Suite 340
Scottsdale, Arizona 85250
480-327-6650
brian.schulman@weissbrown.com
nedda.gales@weissbrown.com
lauren.shapiro@weissbrown.com
*Attorneys for Plaintiff Andrea Mortenson*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andrea Mortenson, <br><br> Plaintiff, <br><br> vs. <br><br> American Heritage Life Insurance Company, d/b/a Allstate Benefits, a Florida corporation; The Allstate Corporation, a Delaware corporation, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT** <br><br> **(Jury Trial Demanded)** |

Plaintiff Andrea Mortenson ("Mortenson"), for her complaint against Defendants American Heritage Life Insurance Company, d/b/a Allstate Benefits, and The Allstate Corporation (collectively, "Allstate" or "Defendants"), alleges as follows:

## NATURE OF THE CASE

1. This action is brought to remedy discrimination on the basis of sex in the compensation, terms, conditions and privileges of employment and retaliation in violation of the Federal Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), and the Arizona Equal Pay Act, A.R.S. § 23-341.

2. Mortenson also brings a claim of retaliation in violation of 29 U.S.C. § 215(a)(3).

3. This action also is brought to recover damages from Defendants' breach of

{WB464094 }

contract and breach of the implied covenant of good faith and fair dealing.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter and the parties hereto pursuant to 28 U.S.C. § 1331.

5. This Court has supplemental jurisdiction over Mortenson's state law claims because such claims are so related to Mortenson's federal claim that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367.

6. Injunctive and declaratory relief, damages and other appropriate legal and equitable relief are sought pursuant to 29 U.S.C. § 216(b).

7. Venue in this Court is proper because the unlawful acts complained of herein occurred within Maricopa County, Arizona.

## PARTIES

8. Mortenson is a female individual, who resides in Maricopa County, Arizona.

9. Upon information and belief, Defendant American Heritage Life Insurance Company, d/b/a Allstate Benefits, is a Florida corporation and a subsidiary of The Allstate Corporation, with an address of 1776 American Heritage Life Drive, Jacksonville, Florida 32224.

10. Upon information and belief, Defendant The Allstate Corporation is a Delaware corporation with its principal place of business in Northfield Township, Illinois.

11. Defendants are "employers" pursuant to Title VII.

## FACTS

12. Mortenson is currently employed by Allstate. She was hired on September 19, 2016 as a sales consultant for the state of Arizona selling Allstate voluntary benefit plans.

WEISS BROWN
6263 N. SCOTTSDALE ROAD STE. 340
SCOTTSDALE, ARIZONA 85250
480.327.6650

13. Mortenson has worked in the employee and voluntary benefits industry since 1988. During this time, she became knowledgeable in the industry by selling products such as medical, self-funding, dental, vision, life, disability, accident plans, critical illness plans, cancer plans, and hospitalization plans. She also developed many long-term business relationships with Arizona insurance brokers and agencies, which are Defendants' clientele.

14. In November 2013, prior to being hired at Allstate, Mortenson founded EasyEnroll, LLC, an Arizona limited liability company ("EasyEnroll"), which provides agencies with affordable practical electronic enrollment solutions and builds services for these platforms.

15. When Allstate hired Mortenson, Allstate agreed (through Mortenson's former managers, Mark Boyes and Rick Sutherland, acting upon the approval of Clark Watkins and Walter Jones) that Mortenson could retain her ownership interest in EasyEnroll.

16. As part of that agreement, the parties agreed that: (a) Mortenson would refer to Allstate the business of certain brokers, and not receive commissions on sales involving these brokers; and (b) Mortenson could continue receiving commission from products sold through EasyEnroll, but she could not sell any new commissioned business.

17. As compensation for Mortenson's employment at Allstate, Mortenson received a flat salary of $30,000 per year, and a $5,000 monthly guarantee for the first twelve months of employment (the "Guarantee").

18. Allstate later extended the Guarantee for an additional ten months. The Guarantee ended in July 2018 and Mortenson received her last Guarantee payment in September 2018.

19. After the Guarantee ended, Allstate paid Mortenson $30,000 per year plus

3

{WB464094 }

commissions.

20. At the time of hire and as agreed upon between Allstate and Mortenson, Mortenson brought over her book of business to Allstate, which was valued at $22,500 a year in renewable commissions.

21. Mortenson does not receive any commissions from Allstate on this book of business she turned over to Allstate.

22. Within one year of joining Allstate, Mortenson increased sales in her region by 208% from her predecessor, Matt Sledge.

23. Specifically, during Mr. Sledge's tenure, he wrote $249,000 in sales for 2015 and $162,000 in sales for 2016.

24. Mortenson wrote more than $500,000 in sales in 2017 and more than $608,000 in sales for 2018.

25. Mortenson has received multiple awards from Allstate for her achievements.

26. For example, in 2017 Mortenson was the #1 Sales Consultant for Life Insurance Sales (EGTL) for Allstate Benefits.

27. Currently, Mortenson ranks near the top in sales in her region and near the top within the company for the following 2018 additional benchmarks: Top-Ranking in PinnacleCare Sales, Top-Ranking in New Producer Sales, Top-Ranking in EGTL Sales, and Top-Ranking in UL/TL Sales.

28. For 2018, Mortenson exceeded her goal for the number of initial premiums (i.e., new sales), and exceeded her new producer goal (i.e., new brokers).

29. In addition to her 2017 and 2018 accomplishments, Mortenson has been assisting the Allstate Technology Department in data formatting from EaseCentral (one of

4

{WB464094 }

Allstate's enrollment software partnerships) and assisting her sales colleagues on how to use EaseCentral.

30. In or about September 2018, Mortenson was involved in email correspondence with Allstate's operations department regarding issues with enrollment for guaranteed issue disability policies.

31. When the issue escalated to Mortenson's managers, Mr. Watkins asked Mortenson in a private email, copying Mortenson's managers John Walker and Art Kasabian, whether Mortenson owned an enrollment company.

32. Mortenson responded to Mr. Watkins' email directly, giving a transparent explanation about what EasyEnroll was, how it worked, how Allstate had given her approval to continue her ownership of EasyEnroll at the time of her hire, and how there was no conflict of interest given that EasyEnroll did not compete with Allstate.

33. Mortenson never received a response to that email or any other questions from any of her managers on the email thread.

34. On or about October 2, 2018, at a regional sales meeting, Mortenson and her colleagues raised complaints about the payment of earned sales incentive compensation, questioning what sales are submitted from the electronic portals and stating that they do not have the ability to verify what policies/sales Allstate receives from these electronic portals. As a result, they cannot confirm that they are paid the correct commissions.

35. At that meeting, Mortenson identified specific instances where her sales were missing from commission reports, so she was not paid the correct commission amount.

36. On October 24, 2018, within weeks after raising her concerns about the commissions, Mortenson received an email from HR Comply, the human resource

compliance division of Allstate, objecting to Mortenson's ownership of EasyEnroll and stating:

> If you want to continue to pursue this other insurance related work, you will need to terminate your Allstate position forthwith. ACTION REQUIRED: To follow up, we will need you to confirm to HRComply@allstate.com what your current role and ownership status with EasyEnroll is [sic] later than October 31, 2018. If you have any questions or need additional clarity, please contact us at HR Comply.

37. Troubled by Allstate's apparent breach of their agreement, Mortenson sought guidance from her managers, specifically Messrs. Watkins and Walker, who directed her to respond to HR Comply.

38. Mortenson responded to HR Comply and copied Messrs. Watkins and Walker, describing her ownership of EasyEnroll.

39. In her response, Mortenson was transparent about the discussions she had with her managers when she was hired, provided emails from her then-current supervisor, Rick Sutherland, confirming the involved carriers, and reiterated her commitment to Allstate.

40. Mortenson followed-up with her supervisors to learn the status of the matter, but received no response, leaving her in constant fear that she may be terminated, notwithstanding the agreement that had been reached when she was hired.

41. Around the time of the email from HR Comply, Mortenson reviewed past correspondence from the time of her hire. During that review, she realized that she inadvertently had been sent an email message on September 27, 2016 from Mr. Boyes listing the guarantee amounts for other employees in sales consultant positions.

42. The September 27, 2016 email reveals discrepancies in pay between Mortenson's male and female colleagues.

43. Mortenson's male counterparts, and specifically her predecessor, each started

6

{WB464094}

at monthly guarantees of $6,200 and $7,500.

44. In contrast, Mortenson and her female counterparts started at monthly guarantees of $5,500, $5,000, and $3,000.

45. In early November 2018, the Allstate Privacy Office notified Mortenson that she uploaded files that may be a violation of Allstate's policies and standards.

46. Mortenson responded to the notification, explaining that the uploaded files are those that Allstate's Technology Department requested Mortenson provide because the Technology Department did not have the necessary connection to obtain the files.

47. In her response, Mortenson provided records of the request and her communication with Allstate's Technology Department.

48. After submitting her response, Mortenson received a terse email from Mr. Watkins accusing Ms. Mortenson of sending personal health information to an unsecured email. However, the "unsecured email" was the secured URL address for the electronic portal that the Technology Department requested Ms. Mortenson use to download reports from and send to the Technology Department to assist with enrollments.

49. On November 13, 2018, Mortenson received an email from a representative of Allstate's Data Loss Prevention, stating that the alleged privacy incident "would not require additional review," and instructing Mortenson to advise her "senior leadership" (which Mortenson did).

50. During this same week, Mortenson received emails from her manager about being behind on her sales goal for the year; however, he did not consider that the last two months of the year are the busiest and that the majority, if not all, of her colleagues were also behind on their sales goals for the year as well.

7

{WB464094}

51. Mortenson continued to feel uneasy about whether her sales have been properly computed since discovering that Allstate has not been properly crediting her with certain sales.

52. In December 2018, Mortenson failed to attend an open enrollment fair that she confirmed she would attend.

53. Mortenson had agreed to attend the open enrollment fair prior to being told she was being terminated for owning EasyEnroll, and prior to being told that the Western Region Enrollment Department would not be sending an enroller to the same fair because the last two years were not fruitful.

54. Allstate's legal counsel called Mortenson's failure to attend a "serious performance issue," and claimed that Allstate lost out on about fifty life applicants, who enrolled with a competitor.

55. However, it is Allstate's well-established policy that only "enrollers," not sales consultants, can enroll members.

56. It is apparent that the fabricated "performance" issue is an attempt to justify terminating Mortenson.

57. On December 12, 2018, HR Comply emailed Mortenson and asked whether she had discussed with her boss, John Walker, whether she would be separating.

58. Mr. Walker has had limited discussions with Mortenson regarding the emails with HR Comply. Those discussions did not address separation.

59. To date, Allstate and Mortenson have yet to reach a resolution regarding Mortenson's termination. The lack of any resolution has caused substantial anxiety and worry for Mortenson.

{WB464094}

60. Upon information and belief, Allstate intends to replace Mortenson with a younger man, who had been employed in Tucson, Arizona with no previous insurance experience.

61. Upon information and belief, Allstate has been intentionally delaying the processing of Mortenson's sales, thereby delaying payment of Mortenson's commissions, in an attempt to avoid payment of commission on products that Mortenson has sold.

62. In addition to three other matters regarding clients Protex, AME Electrical, and Terros, Allstate Technology acknowledges that it delayed submitting an electronic enrollment for a sale by Mortenson that she completed on or about November 28, 2018.

63. Moreover, Allstate did not include all of Mortenson's sales for a UL/Term insurance sales contest in December 2018, thereby depriving Mortenson of a bonus as well as potentially depriving Mortenson of her commission on those sales.

64. Mortenson remains in a constant state of worry because she fears that Allstate will continue to misprocess her business and deprive her of her wages.

65. Allstate's actions have created an environment of hostility, making it impossible for Mortenson to effectively perform her role.

66. Pursuant to A.R.S. § 23-1502, Mortenson provided Allstate with written notice that such working conditions exist at Allstate that she believes are objectively so difficult or unpleasant that she feels compelled to resign or intends to resign.

67. As a result of Allstate's sex-based wage practices, Mortenson has lost wages because she is a woman.

68. As a result of Allstate's retaliation towards Mortenson causing delay of payment of commissions to Mortenson and threatening discipline, Mortenson has lost an

9

{WB464094 }

unknown amount of wages and commission.

69.  Additionally, as a result of the foregoing, Mortenson has suffered significant emotional duress. Her feelings of being targeted and victimized by Allstate have left her depressed, anxious, angry, and humiliated. She continues to feel emotionally distraught in her position with Allstate.

## CLAIMS FOR RELIEF

### COUNT ONE
**(Sex-Based Pay Discrimination in Violation of the Equal Pay Act)**

70.  Mortenson hereby re-alleges and incorporates the preceding paragraphs of this complaint.

71.  Defendants have employed Mortenson and male employees in jobs as sales consultants requiring equal skill, effort, and responsibility.

72.  Mortenson and male employees performed their jobs under similar working conditions.

73.  Mortenson was paid a lower Guarantee than her male predecessor and similarly situated male colleagues performing substantially similar work.

74.  The differential in pay between male and female employees was not due to a bona fide seniority system, a bona fide merit system, or a bona fide system that measures employee earnings by quantity or quality of work, nor was the difference in pay a result of a factor other than sex.

75.  Defendants willfully caused, contributed to, or caused the continuation of wage rate discrimination based on sex, in violation of the Equal Pay Act.

76.  As a direct, legal and proximate result of the discrimination, Mortenson has sustained, and will continue to sustain, economic damages to be proven at trial.

10

{WB464094 }

77. As a result of Defendants' actions, Mortenson has suffered emotional distress, resulting in damages in an amount to be proven at trial.

78. Mortenson further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for equal pay violations at trial, including liquidated damages for all willful violations, prejudgment interest, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. § 216(b).

**COUNT TWO**
**(Retaliation under 29 U.S.C. § 215(a)(3))**

79. Mortenson hereby re-alleges and incorporates the preceding paragraphs of this complaint.

80. Mortenson, through counsel, advised Defendants of its unlawful and discriminatory employment practices based on sex.

81. As a result of Mortenson's complaints, Defendants' agents and employees took materially adverse actions against Mortenson, including, but not limited to, making threatening claims of serious misconduct and of termination, and failing to credit earned compensation.

82. Defendants' adverse actions constituted retaliatory workplace harassment.

83. Defendants' retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under 29 U.S.C. § 215(a)(3).

84. As a direct, legal and proximate result of Defendants' retaliation, Mortenson has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

85. Mortenson is entitled to her reasonable attorneys' fees and costs of suit.

## COUNT THREE
**(Sex-Based Pay Discrimination in Violation of the Arizona Equal Pay Act – A.R.S. § 23-341)**

86. Mortenson hereby re-alleges and incorporates the preceding paragraphs of this complaint.

87. Defendants have employed Mortenson and male employees in jobs as sales consultants requiring equal skill, effort, and responsibility.

88. Mortenson and male employees performed their jobs under similar working conditions.

89. Mortenson was paid a lower guarantee than her male predecessor and similarly situated male colleagues performing substantially similar work.

90. The differential in pay between male and female employees was not due to a bona fide seniority system, a bona fide merit system, or a bona fide system that measures employee earnings by quantity or quality of work, nor was the difference in pay a result of a factor other than sex.

91. Defendants caused, contributed to, or caused the continuation of wage rate discrimination based on sex, in violation of the A.R.S. § 23-341.

92. As a direct, legal and proximate result of the discrimination, Mortenson has sustained, and will continue to sustain, economic damages to be proven at trial.

93. As a result of Defendants' actions, Mortenson has suffered emotional distress, resulting in damages in an amount to be proven at trial.

94. Mortenson further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for equal pay violations at trial, including

liquidated damages for all willful violations, prejudgment interest, attorneys' fees and costs, and other compensation pursuant to A.R.S. § 23-341.

## COUNT FOUR
### (Violation of Arizona Wage Act – A.R.S. § 23-350 *et seq.*)

95. Mortenson hereby re-alleges and incorporates the preceding paragraphs of this complaint.

96. During Mortenson's employment, Defendants failed to pay commissions and wages to Mortenson which were earned and due to her.

97. Defendants, without a good faith dispute, failed to pay commissions and wages as required by A.R.S. § 23-353.

98. As a direct, proximate and legal result of Defendants' failure to pay commissions and wages, Mortenson has incurred damages.

99. Defendants' failure to pay the monies owed was done without a good faith dispute as to Mortenson's entitlement to said monies and Mortenson is entitled to treble damages pursuant to A.R.S. § 23-350 *et seq.* in an amount to be proven at trial.

100. This matter arises out of an express or implied contract and Mortenson is entitled to an award of reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.

## COUNT FIVE
### (Breach of Contract)

101. Mortenson hereby re-alleges and incorporates the preceding paragraphs of this complaint.

102. As agreed, Mortenson joined Defendants subject to Mortenson's right to maintain ownership of EasyEnroll and upon Mortenson referring the business of certain brokers to Defendants. Mortenson complied with her end of the bargain.

103. Defendants have unilaterally changed the agreed-upon terms of Mortenson's

WEISS BROWN
6263 N. SCOTTSDALE ROAD STE. 340
SCOTTSDALE, ARIZONA 85250
480.327.6650
{WB464094 }

hire and advised Mortenson that she must divest her ownership of EasyEnroll or face termination.

104. As a direct, proximate and legal cause of Defendants' breach of contract, Mortenson has suffered both direct and consequential damages in an amount to be determined at trial.

105. This matter arises out of an express or implied contract and Mortenson is entitled to an award of reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.

## COUNT SIX
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

106. Mortenson hereby re-alleges and incorporates the preceding paragraphs of this complaint.

107. The employment relationship between Mortenson and Defendants has been and remains contractual in nature and subject to the implied covenant of good faith and fair dealing.

108. Defendants have breached the implied covenant of good faith and fair dealing by the acts and omissions as alleged herein that have injured and continue to injure the right of Mortenson to receive the benefits of her employment.

109. As a direct, proximate and legal cause of Defendants' breach of the implied covenant of good faith and fair dealing, Mortenson has suffered direct and consequential damages in an amount to be determined at trial.

110. This matter arises out of an express or implied contract and Mortenson is entitled to an award of reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.

## PRAYER FOR RELIEF

**WHEREFORE**, Mortenson prays for relief as follows:

{WB464094 }

1. For a declaration that Defendants' actions and practices complained of herein are unlawful;

2. For lost wages and all other compensation denied or lost to Mortenson by reason of Defendants' unlawful action, in an amount to be proven at trial;

3. For compensatory and punitive damages for Mortenson's emotional pain and suffering, in an amount to be proven at trial;

4. For liquidated damages;

5. For treble damages for unpaid commissions and wages to be proven at time of trial;

6. For interest on lost wages, compensation and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

7. For an order enjoining Defendants from engaging in the unlawful acts complained of herein;

8. For attorneys' fees and costs of suit pursuant to A.R.S. § 12-341.01, and other laws; and

9. For such other relief as this Court deems just and proper.

## JURY DEMAND

Mortenson hereby demands a trial by jury of all issues so triable.

Dated this 22nd day of February, 2019

                WEISS BROWN

                By: */s/ Brian J. Schulman*
                     Brian J. Schulman
                     Nedda R. Gales
                     Lauren Y. Shapiro
                     6263 N. Scottsdale Road, Suite 340
                     Scottsdale, Arizona 85250
                     *Attorneys for Plaintiff Andrea Mortenson*

{WB464094 }

ORIGINAL of the foregoing
filed with the Clerk of Court
this 22nd day of February, 2019

/s/ *Heather Barr*

{WB464094 }